IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

BRANDON LACY                                                    PETITIONER

v.                                    No. 5:19-cv-95-DPM

DEXTER PAYNE, Director,
Arkansas Division of Correction                              RESPONDENT

## ORDER

The remaining part of Lacy's motion, *Doc. 28,* to alter or amend the Judgment is denied. The new discovery materials do not contain information that justifies altering the Judgment. Lacy has not demonstrated that the Judgment suffers from a manifest error of law or fact. *Perez v. Does 1-10,* 931 F.3d 641, 646–47 (8th Cir. 2019). His motion to file a supplemental *habeas* petition is also denied. *Doc. 106.* Even if timely, the proposed supplement is futile. *Geier v. Missouri Ethics Commission,* 715 F.3d 674, 678 (8th Cir. 2013).

\*

Early on, Lacy argued good cause existed for discovery of the state prosecutor's files because they were necessary for the factual development of procedurally defaulted claims—Claims 1-8, 3, 8, 22-2, 22-10, 23-1, 23-3, and 23-5—and the related procedural defenses. *Doc. 18 at 4-7.* This Court denied his motion without prejudice as

premature. *Doc. 23.* In its final Order, this Court held Lacy could not establish good cause to support a renewed discovery request. *Doc. 26 at 16–17.* Though the Court had asked Lacy to renew his discovery request, if necessary, after the Court winnowed the claims, a winnowing order was no longer warranted after the intervening decision in *Shinn v. Martinez Ramirez,* 596 U.S. 366 (2022). *Doc. 26 at 16-17.* Lacy moved to amend the Judgment. This Court denied most of the motion, but reserved a ruling on how the prosecutor's files might affect the analysis on a few claims. Out of an abundance of caution, this Court permitted Lacy to issue a subpoena *duces tecum* to the Benton County Prosecutor's Office for undisclosed victim-impact and work-product files. *Doc. 47.* There have been many disputes along the way; briefing has been thorough. The press of other business has delayed the Court in addressing the remaining issues. In the meantime, Lacy has moved to file a "first amended supplemental petition" asserting echoing additional claims. *Doc. 106.* Payne opposes this step. *Doc. 107.*

\*

In his post-discovery briefing, Lacy has abandoned his arguments about Claims 22-2, 22-10, 23-1 and 23-5. Review therefore is limited to whether the existing record was adequate to resolve the remaining claims enumerated in the discovery motion. *Doc. 47 at 7–8.* These are Claims 1-8, 3, 8, and 23-3.

-2-

There are two record-related issues. First, the new material Lacy has attached to his post-discovery briefing, *Docs. 89-1 through 89-5*, is not part of the prosecutor's files that are the subject of this review. The material, moreover, does not support Lacy's argument that the files contain undisclosed evidence that would have either significantly advanced his claims or prompted discovery of the new material. Second, Lacy has not shown that reopening the case to consider a cumulative due process claim based on the prosecutor's files (proposed Claim 23-6) is warranted. To the extent Lacy seeks more discovery based on supposedly undisclosed material, his requests are denied. The prosecutor's office has made two productions, providing hundreds of pages. This Court is not persuaded that any materials are being withheld.

*

The Court sees no sufficient reason to grant relief based on the prosecutor's files. Even if Lacy has shown cause to excuse procedural default based on the prosecutor's nondisclosure of some information, the merits of the claims remain dry. The prosecutor's files add a fact here and there. But this Court's review of the new material leaves no doubt about the integrity of the Judgment.

In Claim 1-8, Lacy argued his trial lawyers should have presented available penalty-phase evidence of a relationship (or perceived relationship) between the victim Randy Walker and Lacy's estranged

-3-

wife, Melissa. He said in his discovery motion that the victim-outreach file might include information about the extent of the relationship. *Doc. 18 at 6.* This Court had concluded that his procedural default of the ineffectiveness claim was not excused because the claim was not substantial. *Doc. 26 at 54; Martinez v. Ryan,* 566 U.S. 1, 14 (2012). For the same reasons that the claim was not substantial, it is meritless. File notes that Walker was a friend of Melissa's family and paid some of her bills doesn't alter this Court's analysis of the claim.

Lacy argued in Claim 3 that his due process right was violated because Dr. Frank Peretti, the medical examiner, had no scientific basis for testifying that Walker was alive when Lacy started the fire near his body. He also said Dr. Peretti offered inconsistent testimony at the trial of Lacy's co-defendant, Brody Laswell. This Court held that the claim was procedurally defaulted and meritless. *Doc. 26 at 29, 60–62.*

Dr. Peretti testified that he determined from Walker's fifteen percent carboxyhemoglobin level and clean air passages that he was a smoker, because smokers can have an elevated level of ten percent. He told the jury that the remaining five percent elevation indicated Walker was "alive during the fire" and may have breathed in as he was dying. *Doc. 26 at 29.* He referred to his autopsy report, which included the toxicology test results and his conclusion that Walker's carboxyhemoglobin level indicated that he was alive at the time of the fire. On cross-examination, Lacy's lawyer showed Dr. Peretti a journal

-4-

article that smokers can have an elevated carboxyhemoglobin level of fifteen percent. At Laswell's trial, Dr. Peretti testified that Walker's elevated level could have been a combination of heavy smoking and dying breaths. Having been presented with the literature challenging his position at Lacy's trial, Dr. Peretti was less certain at Laswell's trial about the timing of Walker's death. But the prosecution's theory was the same at both trials. *Doc. 26 at 62.*

In Lacy's discovery motion, he contended the prosecutor's work-product file might contain Dr. Peretti's pretrial interview, which might show the prosecution knew Dr. Peretti couldn't support his conclusion about the timing of Walker's death. *Doc. 18 at 5.* The file did contain notes on Dr. Peretti's interview before trial. He told prosecutors that Walker was "probably unconscious during fire." *Doc. 106-2 at 39.* There was no mention in the interview notes about Walker's carboxyhemoglobin levels.

Lacy responds with a new contention. He now says the notes' silence shows the prosecution knew that Dr. Peretti couldn't support his conclusion that Walker was alive when Lacy started the fire and that Dr. Peretti adopted this position shortly before trial at the prosecution's urging. But Lacy is only speculating that something is missing from the interview notes. Dr. Peretti's opinion, moreover, was neither new nor surprising. Lacy had Walker's autopsy report; his lawyer had the journal article in hand to challenge Dr. Peretti's conclusions. Nothing

in the prosecutor's file about this part of Dr. Peretti's testimony warrants altering the Judgment.

In Claim 8, Lacy argued his trial lawyers should have discovered that one of Walker's children opposed seeking the death penalty, and then used that information to spur plea negotiations. This Court found this ineffectiveness claim was not substantial and therefore procedurally defaulted. *Doc. 26 at 20; Martinez*, 566 U.S. at 14. In his discovery motion, Lacy said that the trial lawyers knew at least one of Walker's sons opposed the death penalty, and that the victim-outreach file would show the extent of the family's opposition to a death sentence. *Doc. 18 at 5.*

In support of reopening the case, Lacy points to a prosecutor's file note that Walker's ex-wife hoped Lacy would receive "clemency in 30 years." *Doc. 89 at 15.* He says other notes show that Walker's family had sympathy for Lacy. Even though there's now a bit more information in hand, this claim remains meritless. Lacy knew before trial that Walker's son was not in favor of seeking the death penalty. And who can say whether other family members' views would have made a real difference to an elected prosecutor faced with a horrific crime? Slightly more evidence that the Walker family opposed the sentence does not call the Judgment into question.

Lacy contended in Claim 23-3 that the prosecutor made false statements, or suppressed evidence, when challenging the

admissibility of Rebecca Chaddock's guilt-phase testimony about Laswell's kites—his prohibited jail correspondence—admitting responsibility for Walker's death.    In proffered trial testimony, Chaddock stated that she and Laswell were detained at the Benton County Jail at the same time.  She said Laswell wrote her that, during an argument between Walker and Lacy, Walker "pulled a gun." *Doc. 26 at 55;*  Trial Record 2796–97.  She also said Laswell claimed to have "reacted" and "beat [Walker] down." *Ibid.*

The parties sparred over the admissibility of Chaddock's testimony under the hearsay rule's statement-against-interest exception, which requires an exculpatory statement by the unavailable declarant and circumstances corroborating the statement's trustworthiness.  Ark. R. Evid. 804(b)(3).  The prosecution argued that the kite circumstances, including the jail's segregation of men and women detainees, indicated untrustworthiness, and that Laswell's statement did not exculpate Lacy.  The trial court excluded the testimony, finding the circumstances did not corroborate the statement's trustworthiness.

> I make this decision based upon the credibility of the witness and her testimony and appearance before the Court today, but also multiple fact including that this was apparently two months ago.  She didn't retain the notes if she, in fact, received them, that they were supposedly given to her by the codefendant with whom she had never spoken and who just decided to write her and tell her of his involvement and

> culpability of the crime, which conveniently serves to—for the benefit of her good friend Mr. Brandon Lacy.
>
> Obviously, based upon the situation at the county jail, they were segregated, as she testified today. She never talked to Brody Laswell.

Trial Record 2803. The Arkansas Supreme Court affirmed the exclusion of Chaddock's testimony on different grounds. *Lacy v. State*, 2010 Ark. 388, at 15–16, 377 S.W.3d 227, 236–37. The Supreme Court held the hearsay exception did not apply because Laswell's note did not exculpate Lacy:

> All the statement says is that Laswell "beat Walker down." Laswell never says anything about who hit Walker over the head with the fire poker, who stabbed him in the chest, who slit his throat, and who burned down the trailer. These are all things to which Lacy has admitted. Further, Lacy told police officers and his cousin, [Zach] Fender, that Laswell hit Walker over the head with a weight bar. This statement corroborates Lacy's story but in no way exculpates him.

*Lacy*, 2010 Ark. at 16, 377 S.W.3d at 237.

In its final Order, this Court held Lacy had not rebutted the presumption that the Arkansas Supreme Court also adjudicated his related constitutional claim that the trial court hampered his defense by excluding Chaddock's testimony. Denying that claim under deference review, this Court explained that Chaddock's testimony would not have been significant defense evidence because there was other evidence that Laswell struck the first fatal blow and Chaddock's

testimony would not have exculpated Lacy. *Doc. 26 at 63–65.* As the Arkansas Supreme Court concluded, Chaddock's proffer didn't address Lacy's confession that, after Laswell hit Walker with the weight bar, Lacy stabbed him with the fire poker and cut his throat. And Lacy acknowledged in his police interview and to his cousin that Laswell hit Walker with the weight bar. *Doc. 26 at 55; Lacy,* 2010 Ark. at 15–16, 377 S.W.3d at 236–37. Dr. Peretti testified that each attack—blunt-force head trauma, chest stab wounds, and cutting neck wound—combined to cause Walker's death. He also said each could have independently caused death. *Doc. 26 at 28.*

In his related procedurally defaulted prosecutorial misconduct claim (Claim 23-3), Lacy argued the prosecutor knew Laswell had been disciplined for passing kites to women and had the opportunity to pass kites to Chaddock when he was in a lockdown cell next to the women's section of the jail. He contended the prosecutor committed a *Brady/Napue* violation by failing to disclose Laswell's jail disciplinary reports and by falsely stating Chaddock couldn't have received the kites due to the segregation of male and female inmates. This Court concluded Lacy had not demonstrated cause or prejudice to excuse his procedural default: Lacy had not shown that the prosecutor deliberately withheld Laswell's disciplinary reports or that Chaddock's testimony would have made a difference in the trial's outcome. *Doc. 26 at 55 & 72.*

In his discovery motion, Lacy argued the work-product file might show that, despite his hearsay argument, the prosecutor knew that Laswell had received disciplinary reports for passing kites to women. *Doc. 18 at 6.* The prosecutor's files included notes from the prosecution's phone interview of Chaddock after she was listed as a defense witness. There are two sets of notes, which appear to be from the same interview. In support of reopening the case, Lacy adds that the notes show the prosecutor knew Chaddock's testimony would have been reliable and exculpatory.

Lacy says Chaddock's proffered testimony is consistent with her interview statement about receiving the kites and her relationship with Lacy. He points to her statements explaining how Laswell got her the kites and describing Walker pulling a gun on Lacy. *Doc. 103-1 at 7–8.* He says the file shows the prosecution knew Laswell had been disciplined for passing kites. Laswell's disciplinary reports are not part of the prosecutor's files. A law student's memo listing Laswell's jail disciplinaries is. That memo included "Unauthorized correspondence" and being caught with "fishing string" among Laswell's disciplinaries. *Doc. 103-1 at 3.* Lacy now argues all this would have alerted the prosecutor that his hearsay argument was unfounded.

The prosecutor's overlooking the law student's memo listing Laswell's disciplinaries is hardly extraordinary. But, even if the prosecutor stumbled, the non-disclosure of the files falls short of

-10-

evidence suppression.    Chaddock was a defense witness.    Lacy's lawyers interviewed her before trial and then added her to their witness list.  In her proffer, Chaddock said she told the lawyers that "Laswell beat Walker down."  Trial Record 2795.  They presumably knew how far her testimony would go toward exonerating Lacy.

Even if Lacy's misconduct argument based on the file materials is correct, the prosecutor's files are immaterial.  The interview notes could not have reasonably "put the whole case in such a different light as to undermine confidence in the verdict."  *Klein v. Martin*, No. 25-51, slip op. at 9 (U.S. 26 January 2026) (*per curiam*) (quotations omitted).  Nor has Lacy shown that the prosecution's hearsay argument or the file material "may have had an effect on the outcome of the trial."  *Napue v. Illinois*, 360 U.S. 264, 272 (1959).  The procedurally defaulted claim therefore can't overcome the prejudice bar and is meritless.  *Banks v. Dretke*, 540 U.S. 668, 698–99 (2004).

Lacy points to Chaddock's description of the kites' contents as specified in the prosecution interview notes, which similarly describe Chaddock's statement:  "Laswell says he did it, Lacy had nothing to do with it," *Doc. 89 at 20*, and "Laswell said he was the one that made the final blows and Lacy had no part of it," *Doc. 103 at 2.*  Lacy argues

---

\* The interview notes are part of the record.  *Doc. 80, Vol. 2 of 7* (sealed); *Doc. 103-1 at 7–8.*

Chaddock's interview statements are exculpatory. But he doesn't explain how they differ materially from her non-exculpatory proffer. *Doc. 26 at 63–65; Lacy,* 2010 Ark. at 15–16, 377 S.W.3d at 236–37.

In any event, reading the two notes about Chaddock's interview together with her proffered testimony, the interview statements do not exculpate Lacy from inflicting any fatal blows. According to one interview note, Chaddock said Laswell wrote that "he did it" and "Lacy had nothing to do with it." *Doc. 89 at 20.* But whether the "it" refers to the attack as a whole or only Laswell's weight-bar blows must be considered in the context of Chaddock's proffer. Under oath, Chaddock addressed only Laswell's weight-bar attack that "beat [Walker] down, *Doc. 26 at 55,* and, according to Dr. Peretti, likely rendered Walker unconscious. *Doc. 26 at 28.* Lacy, moreover, admitted that, after Laswell struck Walker with the weight bar, he (Lacy) stabbed Walker in the chest, slit his throat, and burned down the trailer. The kites did not address Lacy's attacks on Walker after Laswell's blows knocked him to the ground.

All things considered, Lacy has not demonstrated manifest error. The relevant information springs from Chaddock, who was identified and developed as a defense witness before the prosecutor interviewed her. Her description of the kites and their contents were not hidden from Lacy's lawyers. Though Chaddock may have gone further to exonerate Lacy in her phone conversation with the prosecutor, this

Court is not persuaded that the interview notes would have made any material difference in the admissibility of her testimony or in the trial's outcome.

*

Lacy also seeks leave to file a supplemental petition that, he says, is based on the prosecutor's files. He argues that, because he has moved to alter or amend the Judgment, this Court should consider his request to supplement under Rule 15(a)(2). Before trial, courts must "freely give leave [for amendments] when justice so requires." Fed. R. Civ. P. 15(a)(2). Even if Lacy is correct that, by seeking to amend the Judgment he has reopened his case for Rule 15(a)(2) purposes, his motion is denied based on futility. *Geier*, 715 F.3d at 678.

In his first supplemental claim, Lacy says the prosecution suppressed evidence from the file about a relationship between Melissa and Walker, Walker's access to guns at the time of the murder, the Walker family's sympathy toward Lacy, and their anti-death penalty views. The claim is a recasting of ineffectiveness claims (Claims 1-8 and 8), which the Court has addressed on the motion to amend the Judgment. Leave to supplement the petition with this echoing claim is denied for the same reason. It would be futile. Lacy has not identified any facts that would establish a solid *Brady* claim. Either Lacy was already aware of this information or it's immaterial. *Klein*, slip op. at 9.

-13-

Lacy next says the prosecution interfered with defense efforts to contact the Walker family. He speculates that they could have provided mitigation evidence and elaborated on their anti-death penalty views. To the extent the proposed claim restates the substance of the related ineffectiveness claim (Claim 8), it fails for the same reasons that the Judgment stands. Lacy, moreover, fails to link his interference claim to information from the prosecutor's file. This speculative claim is facially meritless and no more than a "futile gesture[]." *Geier*, 715 F.3d at 678 (quotations omitted).

In his third proposed claim, Lacy alleges the prosecution knowingly presented false evidence about the timing of Walker's death. His proposal seems to be a revised version of his due process claim (Claim 3) challenging Dr. Peretti's testimony. For this new claim, Lacy primarily relies on the defense team's notes from Dr. Peretti's interview. Dr. Peretti told the defense lawyers that, after Walker suffered the fatal injuries, the killer did not have time to "walk 20 ft to get accelerant" before Walker died. *Doc. 106-1 at 24–25*. The notes, however, also state that Dr. Peretti determined Walker took "2 or 3 breaths maybe more" after the fire was started. *Doc. 106-2 at 43*.

Lacy's argument is that, despite knowing the extent of Walker's injuries, the prosecution "pushed the narrative" that Walker inhaled smoke before he died. *Doc. 106-1 at 29*. The Court denies leave to file this supplemental claim based on futility and undue delay. *Reuter v.*

*Jax Ltd., Inc.*, 711 F.3d 918, 922 (8th Cir. 2013).  The defense notes do not support a claim of prosecutorial misconduct.  In his pretrial interview, Dr. Peretti told prosecutors that Walker "was still alive at the time of fire because of hemorrhaging."  *Doc. 103-1 at 2.* This proposed claim doesn't grow out of the prosecutor's file; it springs from previously available defense material; and Lacy offers no good reason for only raising it after Judgment.

* * *

For all these reasons, the remainder of Lacy's Rule 59(e) motion, *Doc. 28*, and his motion seeking leave to file supplemental claims, *Doc. 106*, are denied.

So Ordered.

_____
D.P. Marshall Jr.
United States District Judge

_17 February 2026_

-15-